# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEE SEAMANS, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6027 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| HOFFMAN, SWARTZ AND | ) | |
| ASSOCIATES, INC., PARIS TAURIAC, | ) | |
| and LES COVINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee Seamans filed suit against Paris Tauriac, Les Covington, and Hoffman, Swartz and Associates, Inc. (HSA), alleging violations of the Fair Debt Collection Practice Act (FDCPA) and fraud. Initially, Seamans obtained a default judgment against all defendants, but the judgment against Tauriac was vacated. Seamans and Tauriac have filed cross motions for summary judgment. The Court grants Tauriac's motion [85] and denies Seamans's motion [84].

## Factual and Procedural Background

Hoffman, Swartz and Associates, Inc. (HSA), is a Georgia corporation engaged in the business of debt collection.[1] In that role, HSA acquires debts from the original creditor and attempts to collect on at least a portion of the amount owed. So, for instance, if HSA is able to contact a debtor, they try to set up a

---

[1] The name of the company is curious. The company is certainly not named after Tauriac, nor is there anything in the record to connect the name to anyone affiliated with Tauriac.

payment schedule that allows the debtor to pay back the debt over time. *See* Tr. 5/29/14 Hr'g at 19:23–20:4, ECF No. 63.[2]

Until May 15, 2013, Defendant Paris Tauriac was the sole owner of the company. *See id.* at 12:4–7. On that date, Tauriac entered into a Stock Purchase Agreement in which she agreed to sell HSA. *See* Def.'s LR 56.1 Stmt. ¶ 7, ECF No. 86.[3] In addition to transferring the ownership in the business and its assets (including its accounts), the Agreement dictated what would happen to the accounts receivable—that is, the debts HSA was attempting to collect. Under the Agreement, Tauriac would retain proceeds from debts acquired prior to May 15, 2013, and the buyer would receive payments on debts acquired thereafter. *See* Pl.'s 56.1 Stmt., Ex. C ("SPA") § 6.1, ECF No. 84.

Although the Agreement transferred all of HSA's accounts to the new owner, Tauriac remained in control of a business bank account where debtors' payments were deposited. *See id.*, Ex. F. Tauriac testified (and Plaintiff points to no contrary evidence in the record) that, because the payment plans HSA negotiated with debtors could extend for many months, funds collected from pre–May 15 debts were

---

[2] Although these portions of the hearing transcript are not part of the Local Rule 56.1 Statements of Facts, the Court relies on it just as background material to better understand the material facts of this case.

[3] Plaintiff Lee Seamans attempts to dispute the validity of the sale by calling it a "sham." *See* Pl.'s Resp. Def.'s 56.1 Stmt. ¶ 6, ECF No. 88. In doing so, Seamans cites the amended complaint. At the summary judgment stage, a plaintiff can no longer merely lean on the allegations in the complaint. In responding to Tauriac's 56.1 Statement of Facts, Seamans needs "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in order to create a genuine dispute. *See* Local Rule 56.1(b)(3)(B). He does not do so.

still being transferred into the account even after the sale of the business. For a few months following the sale of HSA, Tauriac would review the funds that came into the account, keeping money collected from pre–May 15th debts and forwarding along to HSA money from post–May 15 debts. *See id.*

Around June 11, 2013, Plaintiff Lee Seamans received a call from HSA attempting to collect on a debt. *See id.* ¶ 3. The debt, however, had been previously discharged in Seamans's bankruptcy proceeding earlier that year. *See id.* ¶ 1. Seamans filed suit against HSA, Tauriac, and Les Covington (the HSA employee that called Seamans) alleging violations of the FDCPA. *See* Compl., ECF No. 1.

None of the defendants responded to the complaint, and the Court entered a default judgment against all three of them in the amount of $50,000. *See* Min. Order 11/20/13, ECF No. 16. Relying on the judgment, Seamans seized funds from two personal bank accounts belonging to Tauriac. *See* Def.'s LR 56.1 Stmt. ¶ 14. (Seamans contends that the accounts were not Tauriac's personal property, but belonged to HSA.)

When the money was seized, Tauriac filed a motion to vacate the judgment against her, arguing that she had not been properly served. *See* Mot. Vacate, ECF No. 23. The Court held a hearing at which it found that Tauriac had not been properly served and vacated the default judgment against her. *See* Tr. 5/29/14 Hr'g at 35:2–5.

Seamans then amended the complaint and added a claim for fraud against Tauriac for making allegedly false statements during the hearing. *See* Am. Compl. ¶¶ 73–80, ECF No. 55.

## Legal Standard

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

### I. FDCPA Claims

Seamans seeks to hold Tauriac personally liable under the FDCPA for voicemails that he received from HSA regarding the debt that had been discharged in bankruptcy. In his motion, Seamans argues that the facts underlying the calls are undisputed and that, as a result, he is entitled to summary judgment as to the FDCPA claims. *See* Pl.'s Mem. Supp. SJ at 4, ECF No. 84. Tauriac, for her part, contends that she cannot be personally liable because the calls occurred after she

4

sold HSA and there is no evidence that she was an alter ego of the corporation. *See* Def.'s Resp. & Cross-Mot. SJ at 3–5, ECF No. 85.

Generally, officers and shareholders of a debt collector cannot be held liable for violations of the FDCPA. *See Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). Such individuals may be liable, however, if there is a basis to pierce the corporate veil. *See id.*; *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000).[4] Thus, in order for Tauriac to be liable for the alleged FDCPA violations, the circumstances must warrant disregarding corporate formalities. Under Georgia law, the concept of piercing the corporate veil is applied when the defendant has disregarded the corporate entity and made it a mere instrumentality for the transaction of his or her own affairs. *See Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005).[5]

Starting with Tauriac's cross-motion, she asks that the Court reject Plaintiff's veil-piercing theory as a matter of law because she was no longer a shareholder of the corporation at the time HSA called Seamans. *See* Def.'s Resp. & Cross-Mot. SJ

---

[4] To the extent that Seamans argues that employees may be liable under the FDCPA without veil piercing, he is wrong. In fact, the very case he cites in support of this position acknowledges that the Seventh Circuit has foreclosed liability for shareholders or employees absent veil piercing. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009) ("On the other hand, the Seventh Circuit has come down the opposite way, holding that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate veil. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059–60 (7th Cir. 2000); *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000) (Posner, J.).").

[5] The applicable state law to evaluate piercing the corporate veil is the state of incorporation whose veil is sought to be pierced. *See On Command Video Corp. v. Roti*, 705 F.3d 267, 272 (7th Cir.2013).

at 2–5. But a person need not be a shareholder in order to be held liable under a corporate veil-piercing theory, and Tauriac does not point to a case that holds otherwise. In fact, cases from other jurisdictions suggest that non-shareholders can obtain sufficient control and dominance over a corporation to misuse the corporate structure and be subject to veil-piercing. *See Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1103–04 (5th Cir. 1973) (holding that a creditor-debtor relationship could be the basis for a court to ignore corporate structure if there is sufficient control by the dominant entity); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 987 (Del. Ch. 1987) ("[I]t has been acknowledged that one, other than a shareholder, who is in control of and has misused a corporate structure may be held answerable for a corporate liability."); *see also* 1 Fletcher Cyc. Corp. § 42.50.

But even assuming that a non-shareholder could obtain sufficient control over a corporation to warrant veil piercing under Georgia law, Seamans has not presented any evidence from which a reasonable juror could conclude that Tauriac had such control over HSA. For example, there is no evidence that, after the sale, Tauriac controlled HSA's operations. She did not manage the employees, direct who to target for collection, or interact with the new HSA in any way. *Cf. NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 775 (Ga. 1996) (noting that a plaintiff can show that the defendant disregarded the separateness of legal entities "by showing that a disregard of the corporate entity made it a mere instrumentality for the transaction of the other entity's own affairs").

The only connection that Tauriac had with HSA after the sale was that she continued to review HSA's business account to apportion the funds in accordance with the terms of the Agreement. She retained funds that were being paid from pre–May 15 debts and transferred to HAS funds from post–May 15 debts. Without more, this arrangement does not establish the type of control by Tauriac over HSA's business operations necessary for veil piercing. To create an inference of control, Seamans has to come forth with some evidence that, for example, Tauriac failed to properly separate the money collected (and thus commingled funds) or took money for personal use. *See Baille Lumber*, 612 S.E.2d at 299 ("Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties[.]"); *Ishak v. Lanier Contractor's Supply Co.*, 561 S.E.2d 883, 885 (Ga. Ct. App. 2002) (holding that the trial court properly pierced the corporate veil because there was evidence of officers using corporate funds for personal use). Seamans points to no such evidence.

Liability under the FDCPA for shareholders is limited to the circumstances where piercing the corporate veil is warranted. Seamans points to no evidence that Tauriac controlled or improperly dealt with HSA after it was sold. Accordingly, Tauriac's motion as to the FDCPA claim is granted and Seamans's motion is denied.

## II. Fraud

In addition to the FDCPA claims, Seamans asserts a fraud claim against Tauriac arising from her allegedly false statements during the evidentiary hearing before this Court. Both sides seek summary judgment on this claim.

7

Seamans contends that Tauriac falsely testified that the accounts seized were her personal property. After a default judgment was entered against all the defendants in this case, Seamans seized funds from two bank accounts. *See* Def.'s Ex. at 13–15, ECF No. 87. During the hearing on her motion to vacate the default judgment against her, Tauriac testified that both were personal bank accounts—that is, they were not related to HSA. *See* Tr. 5/29/14 Hr'g at 16:24–17:5; *see also* Tauriac Decl. ¶ 9, ECF No. 27 (stating that her accounts were garnished). Seamans argues that the accounts were not in fact Tauriac's personal property, but actually belong to HSA. *See* Pl.'s Mem. Supp. SJ at 5; *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) (noting that the first element of common law fraud is that the defendant made a false statement of material fact). To reach that conclusion, however, Seamans repeatedly conflates the two accounts from which money was seized and a third account that did belong to HSA.

The accounts from which money was seized are both in Tauriac's name and have account numbers ending in 4007 and 6037. Def.'s Ex. at 13–15. The third account, which Seamans relies on, is a business account under the name "Paris Tauriac d/b/a Hoffman Swartz and Associates" and its account number ends in 1108. *See id.* at 3. Seamans's repeated conflation of these three bank accounts is at the heart of all of his argument in support of the fraud claim. For example, in the portion of Tauriac's deposition cited by Seamans, Tauriac explains that, after she sold HSA, as money came into "Hoffman, Swartz's bank account" she would wait for proof that the money was a debt they had collected and would then disburse the

money to another HSA account. Pl.'s 56.1 Stmt., Ex. C. This statement is unambiguously referring to the 1108 business account (the "Hoffman, Swartz's bank account"), not the personal accounts from which money was seized.

The same is true for the responses to written discovery requests and the Stock Purchase Agreement. Both documents relate to the process by which money would be deposited into the 1108 account and then either forwarded to HSA or retained by Tauriac. *See* SPA § 6.1 ("Seller shall keep all post dates and debt acquired prior to May 15, 2013, Buyer shall assume all debt and post dates acquired after May 15, 2013."). There is no evidence showing that the accounts from which money was seized contained money belonging to HSA. Because there is no genuine dispute as to the veracity of Tauriac's statement, she is entitled to judgment as a matter of law. The Court grants Tauriac's motion for summary judgment as to the fraud claim.

## Conclusion

For the reasons stated herein, the Court grants Tauriac's motion for summary judgment [85]. Seamans's motion for summary judgment [84] is denied. Civil case terminated.

**IT IS SO ORDERED.**     ENTERED  9/29/16

*/s/ John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**