IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE SEAMANS, ) | |
| ) | |
| Plaintiff, ) | 13 C 6027 |
| ) | |
| v. ) | Judge John Z. Lee |
| ) | |
| HOFFMAN, SWARTZ AND ) | |
| ASSOCIATES, INC., PARIS TAURIAC, ) | |
| and LES COVINGTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee Seamans ("Seamans") brought this action against Hoffman, Swartz and Associates ("HSA"), Paris Tauriac ("Tauriac") and Les Covington (together, "Defendants"), alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. After succeeding on a motion for summary judgment, Tauriac filed a post-judgment motion for sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 11. For the reasons set forth herein, Tauriac's motion [102] is denied.

## Factual and Procedural Background

Seamans filed his initial complaint against Defendants on August 26, 2013. *See* Compl., ECF No. 1. In this complaint, Seamans alleged that HSA contacted him by telephone on June 11, 2013, about a previously discharged debt, in violation of the Fair Debt Collection Practices Act (FDCPA). *See generally id.* Seamans alleged that Tauriac and Covington were "the managers, operators, supervisors,

and/or owners of [HSA] and ha[d] direct control over the operations of HSA." *Id*. ¶ 6.

None of the Defendants responded to the initial complaint, and this Court entered a default judgment against all three on November 20, 2013. *See* Order of 11/20/13, ECF No. 16. Seamans thereafter seized approximately $50,000 from two bank accounts that he believed belonged to HSA. *See* Mot. Vacate ¶ 6, ECF No. 23.

Tauriac promptly filed a motion to vacate the default judgment, arguing that she had not been properly served with the complaint, and that the funds were seized from bank accounts belonging to her, not HSA. *See id*. She also filed a motion to dismiss, in which she argued that she had sold her ownership interest in HSA via a Stock Purchase Agreement dated May 15, 2013, several weeks before the phone call at issue. 1st Mot. Dismiss ¶ 2, ECF No. 36. Tauriac attached the Stock Purchase Agreement as an exhibit to her motion to vacate, and she referenced it repeatedly in her motion to dismiss. *See* Mot. Vacate, Ex. B; 1st Mot. Dismiss ¶ 2. This Court granted both motions. *See* Order of 5/29/14, ECF No. 29; Order of 1/13/15, ECF No. 54

Seamans subsequently filed an Amended Complaint on January 26, 2015, in which he argued that Tauriac was either still an owner of HSA, or alternatively, that she had commingled her assets with HSA's, rendering her liable to corporate veil piercing. Am. Compl. ¶¶ 54–62 ECF No. 55. In support of the veil piercing contention, Seamans argued that a bank account titled "Paris Tauriac d/b/a Hoffman, Swartz & Associates," in combination with Tauriac's own testimony

2

regarding her handling of HSA's funds, could establish that Tauriac had commingled her personal assets with HSA's. *Id.* In addition, a document from the Georgia Secretary of State listed Tauriac as HSA's owner as of June 13, 2013, two days after the alleged phone call, and nearly a month after the date of the alleged Purchase Agreement. Pl.'s Resp. Mot. Sanctions, Ex. C, ECF No. 108.

Tauriac sought to dismiss the Amended Complaint on the same grounds as her first motion to dismiss. *See* 2d Mot. Dismiss, ECF No. 58. The Court denied the second motion, finding that "Plaintiff Seamans has alleged sufficient facts to state a plausible claim to pierce [HSA's] corporate veil based on [Tauriac's] alleged commingling of HSA and Tauriac's property." Order of 7/27/15, ECF No. 80.

Both parties eventually filed cross-motions for summary judgment, and the Court found in favor of Tauriac, entering final judgment on September 29, 2016. *See Seamans v. Hoffman*, No. 13 C 6027, 2016 WL 5476249 (N.D. Ill. Sept. 29, 2016). The Court concluded that Seamans had not pointed to evidence from which a reasonable jury could find that "Tauriac controlled or improperly dealt with HSA after it was sold." *Id.* at *3. In so ruling, the Court also denied Seamans's claim that Tauriac misrepresented that the accounts seized in executing the default judgment belonged to her, and not HSA. *Id.* at *3–4.[1]

---

[1] In his sur-reply to the present motion, Seamans appears to request that the Court reconsider this ruling. Pl.'s Sur-Reply Opp. Mot. Sanctions at 3, ECF No. 112. Arguments first raised in reply briefs are not ripe for consideration, and this is enough for the Court to deny Seamans's request. *See, e.g.*, *Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997); *United States v. Magana*, 118 F.3d 1173, 1198 n.15 (7th Cir. 1997). But even if the Court were to consider the argument on its merits, Tauriac's reply does not admit such a misrepresentation "by deduction," as Seamans claims. Pl.'s Sur-Reply Opp. Mot. Sanctions at 3. By asserting that her accounts had a positive balance of $17,000 when Seamans

3

Tauriac subsequently filed a motion for sanctions, Def.'s 1st Mot. Sanctions, ECF No. 96, which was stricken for failure to comply with Rule 11's safe-harbor requirement. *See* Order of 11/02/16, ECF No. 101. Tauriac mailed a letter notifying Seamans of her second motion for sanctions on November 17, 2016, and she filed it twenty-one days later. Def.'s 2d Mot. Sanctions ¶ 7, ECF No. 102.

## Analysis

In her motion for sanctions, Tauriac asserts that Seamans lacked a factual basis for including her as a Defendant in his Amended Complaint, and she further asserts that he pursued the action against her with an improper purpose. Def.'s 2d Mot. Sanctions ¶¶ 2, 6.[2] Seamans raises both procedural and merit-based objections to Tauriac's motion. First, Seamans contends that Rule 11 does not allow for post-judgment motions for sanctions, and he requests that this Court deny the motion as untimely. Pl.'s Resp. Mot. Sanctions at 2–3, ECF No. 108. Seamans also argues that Tauriac's motion fails to raise an adequate basis for imposing sanctions, and so cannot succeed regardless of its procedural deficiencies. *Id*. at 3–5.

---

seized $50,000 in funds, Tauriac is not "admit[ting] that the remaining $33,000 came from Defendant HSA's bank accounts." *Id*. at 3. Indeed, Tauriac is explicit that the seizure of funds left "a negative balance in each account in excess of -$33,000." Def.'s Reply Supp. Mot. Sanctions at 2, ECF No. 111. Seamans speculates that a bank would not permit such a balance, Pl.'s Sur-Reply Opp. Mot. Sanctions at 3, but offers no evidence in support of this argument. For these reasons, his request is denied.

[2] Tauriac's contention that Seamans's suit was brought for an improper purpose appears to be nothing more than an extension of her argument that the suit lacked a factual basis. If Seamans knew that the suit lacked a factual basis, as she contends, she maintains that his purpose in litigating the claim must have been to harass her and cause her to lose time and money. Because the Court finds that the suit did not lack a factual basis, as explained *infra*, there is no need to further consider her argument that the suit was brought for an improper purpose.

4

## I. Defendant's Procedural Compliance with Rule 11

Defendant Tauriac's first motion for sanctions, filed on October 31, 2016, was stricken for failure to comply with Rule 11(c)(2)'s twenty-one-day safe-harbor provision. *See* Order of 11/02/16. Tauriac sought to alleviate this deficiency by notifying Seamans of the present motion on November 17, 2016, twenty-one days before she filed it with this Court. Def.'s 2d Mot. Sanctions ¶ 7. Seamans concedes that Tauriac waited twenty-one days after service before filing her motion, but he nevertheless contends that a post-judgment motion for sanctions is necessarily untimely where no notice of the motion was given prior to judgment.[3] Pl.'s Resp. Mot. Sanctions at 2–3. In response, Tauriac argues that principles of equity should outweigh any perceived procedural deficiencies. Def.'s Reply Mot. Sanctions at 1. For the reasons set forth below, the Court disagrees.

In order for a court in this district to consider imposing sanctions under Rule 11, the moving party must comply with the Seventh Circuit's procedural requirements. First, a party seeking to file a Rule 11 motion must serve it on the

---

[3] Seamans also argues that Tauriac's twenty-two-month delay in filing should doom her motion, noting that a motion for sanctions should be "served promptly after the inappropriate paper is filed." Fed. R. Civ. P. 11 advisory committee's notes (1993 amendment). Courts in this district have previously held that Rule 11 motions filed after an eight-month delay are untimely. *XCO Int'l Inc. v. Pac. Sci. Co.*, No. 01 C 6851, 2003 WL 2006595, at *4 (N.D. Ill. Apr. 29, 2003), *aff'd on other grounds*, 369 F.3d 998 (7th Cir. 2004). The Seventh Circuit, however, has upheld motions filed after an even greater lapse of time. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 552–53 (7th Cir. 2011) (upholding an award of sanctions where the moving party filed for sanctions twenty-three days after the court dismissed suit, more than two years after giving a Rule-compliant notice of its intent to seek sanctions). The Court need not decide whether Tauriac's motion is procedurally flawed given that it was filed twenty-two months after Seamans's amended complaint (although considering the circumstances in this case, twenty-two months seems like an unreasonable length of time), because Tauriac failed to substantially comply with Rule 11's safe harbor requirement, as discussed below.

5

non-moving party at least twenty-one days prior to filing it with the court. *Matrix IV*, 649 F.3d at 552. "This practice creates a safe harbor that allows a party to avoid sanctions by amending or retracting a challenged filing." *Olson v. Reynolds*, 484 F. App'x 61, 64 (7th Cir. 2012) (citing Fed. R. Civ. P. 11 advisory committee's notes (1993 amendment)). To that end, the movant must effectuate service early enough that the offending party has an opportunity to act. "Given the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case." Fed. R. Civ. P. 11 advisory committee's notes (1993 amendment)). Sanctions may be imposed after final judgment has been rendered in a case, but only where the moving party has "substantially complied" with Rule 11's safe harbor provisions *before* judgment has been rendered. *Matrix IV*, 649 F.3d at 553 (citing *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999)). The Seventh Circuit—the only circuit that does not require strict compliance with Rule 11's instruction that a motion for sanctions be served on the opponent—instead permits service of a communication that warns of an impending motion for sanctions as a substitute for service of a motion itself. *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 887 (7th Cir. 2017). Nevertheless, even under the Seventh Circuit's substantial-compliance doctrine, sanctions are inappropriate where the non-moving party has not substantially complied with the safe-harbor provision until after the entry of judgment. *Olson*, 484 F. App'x at 64.

Tauriac's attempts to comply with Rule 11's safe harbor requirement fall short. While she did provide Seamans with twenty-one days to consider her motion

6

before filing it with the Court, she did not serve him or otherwise notify him of her intent to seek sanctions until after the entry of final judgment. Seamans was thus denied any opportunity "to avoid sanctions by amending or retracting" his Amended Complaint, because a decision had already been rendered on that pleading. Thus, Tauriac's motion does not comply with Rule 11. *Id.*; *see also Echemendia v. Gene B. Glick Mgmt. Corp.*, No. 1:05-CV-00053, 2006 WL 2095234, at *3 (N.D. Ind. July 27, 2006) (finding that the movant had not complied with Rule 11's safe harbor provision where she served her motion for sanctions after adjudication of the underlying filing); *accord Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 838–39 (N.D. Ill. 2015) (finding that Rule 11 sanctions could not be imposed where a party had already dismissed its pleading before the motion seeking sanctions was served).

To be sure, post-judgment service of Tauriac's motion itself might not prove fatal if Tauriac had otherwise "substantially complied" with the Rule 11 requirement by sending a pre-judgment letter to Seamans referencing sanctions. *See N. Ill. Telecom*, 850 F.3d at 887; *Matrix IV*, 649 F.3d at 553. But Tauriac has not presented any evidence to support such a theory, nor has she adduced evidence that she even broached the subject of sanctions prior to the entry of judgment. Instead, she argues that "a lay person wouldn't consider [threatening sanctions] prior to adjudication," and asks that this Court not strictly apply procedural requirements to her filing. Def.'s Reply Supp. Mot. Sanctions at 1. Such an argument lacks merit, especially when applied to a motion for sanctions, "a tool that

must be used with utmost care and caution." *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988). Rule 11's "safe harbor is not merely an empty formality," and a "court that imposes sanctions by motion without adhering to this twenty-one day safe harbor has abused its discretion." *Divane*, 200 F.3d at 1025–26. Because Tauriac did nothing to effectuate the safe harbor before the entry of judgment, the Court concludes that Tauriac's motion for sanctions is procedurally deficient.

## II. Merits of Defendant's Rule 11 Motion

Assuming *arguendo* that Tauriac's motion was procedurally sound, she would still need to succeed on the merits under Rule 11. Tauriac argues that Seamans had no factual basis for naming her as a Defendant in his Amended Complaint.[4] Def.'s 2d Mot. Sanctions ¶¶ 2–3. Seamans, for his part, contends that he had sufficient evidence to proceed with his amended complaint. Pl.'s Resp. Mot. Sanctions at 3–5. For the reasons set forth below, the Court agrees.

Rule 11 states, in pertinent part, that "[b]y presenting to the court a pleading, . . . an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

---

[4] Tauriac also makes passing challenges to Seamans's legal theory that the owner of a debt-collection agency can be held liable under the FDCPA. Tauriac prefaces her arguments on this point by asserting that Seamans knew or should have known that she did not own or control HSA at the time of the alleged phone call. Def.'s Mem. Supp. Mot. Sanctions at 5, ECF No. 103. This line of argument, however, is better characterized as a challenge to the factual basis for Seamans's complaint, rather than a challenge to his legal theory. In any case, Seamans at no point alleged that Tauriac would be liable under the FDCPA even if she had no interest in or control over HSA. And Tauriac does not appear to dispute that the owner of a debt-collection agency can be liable under the FDCPA "in limited instances where the corporate veil is pierced," which is precisely the theory that Seamans relied upon. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000).

8

circumstances . . . [that] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). A party moving for sanctions under Rule 11 on the basis that the other party has fallen short of this obligation bears a "high burden of showing that [such] sanctions are warranted." *Lundeen v. Minemyer*, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010) (citing *Fed. Deposit Ins. Corp.*, 847 F.2d at 444). In order to assess sanctions, "[t]he court must 'undertake an objective inquiry into whether the [non-moving] party or his counsel should have known that his position is groundless.'" *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). Courts look to several factors in assessing the reasonableness of a non-moving party's factual inquiry, including

> whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Brown v. Fed'n of State Med. Bds.,* 830 F.2d 1429, 1435 (7th Cir. 1987), *abrogated on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). "[T]he application of Rule 11 to the facts and circumstances of a particular case is an exercise of the trial court's discretion." *Divane,* 200 F.3d at 1028.

Tauriac's case for sanctions is premised on a single piece of evidence—an HSA Stock Purchase Agreement that terminated her ownership interest on May 15, 2013. Def.'s 2d Mot. Sanctions ¶ 2. By her way of thinking, no party presented

9

with that document could reasonably assert that she was affiliated with HSA after the date of sale. *Id.* Seamans was aware of the Purchase Agreement when he filed his Amended Complaint, in which he alleges that Tauriac bore some legal responsibility for a phone call from HSA in June of 2013. Pl.'s Resp. Mot. Sanctions at 3–5. For Tauriac, this is conclusive evidence that Seamans's lawsuit was frivolous.

In response, Seamans points to several pieces of evidence demonstrating the extent of his factual investigation. Chief among these are three disputed bank accounts, at least one of which was previously associated with HSA's business operations (as demonstrated by its title, "Paris Tauriac d/b/a Hoffman Swartz & Associates"). Pl.'s LR 56.1(a)(3) Stmt., Exs. A, H, ECF No. 84. While Tauriac has consistently asserted that the accounts were not HSA's property after she executed the Purchase Agreement, Seamans's arguments about commingling were not so unsubstantiated as to be frivolous on their face, as this Court found when it denied Tauriac's second motion to dismiss. *See* Order of 7/27/15 ("Plaintiff Seamans has alleged sufficient facts to state a plausible claim to pierce [HSA's] corporate veil based on [Tauriac's] alleged commingling of HSA and Tauriac's property.").

Second, and more significantly, Seamans proffers a document from the Georgia Secretary of State's website dated June 14, 2013, which lists Tauriac as HSA's CEO and CFO. Pl.'s Resp. Mot. Sanctions, Ex. C. Although the webpage is hardly a conclusive statement of ownership, it does contradict Tauriac's Stock Purchase Agreement in that it lists her as HSA's owner nearly a month after her

asserted date of divestment and days after the phone call at issue. This discrepancy, considered in combination with Seamans's other proffered evidence, was sufficient to merit further investigation into whether Tauriac was truly HSA's owner. Rule 11 does not require that parties abandon all arguments in the face of contrary evidence, even where that contrary evidence later proves dispositive in deciding the matter. *See Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 613 (7th Cir. 1992) (holding that a plaintiff's complaint did not violate Rule 11 even where she relied on "nothing but supposition and conjecture" at the summary judgment stage); *see also Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978) ("Even when . . . the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."). The investigation that Seamans conducted before filing his amended complaint, which called Tauriac's termination of ownership in HSA into question, was reasonable under the circumstances.

Nor do any of Tauriac's cited cases command a different result. In *Land v. Chicago Truck Drivers*, the Seventh Circuit upheld sanctions against an attorney who asserted a legal theory that had been long-rejected, applying a version of Rule 11 that has since been superseded. 25 F.3d 509, 516–18 (7th Cir. 1994). The same version of Rule 11 was at issue in *Teamsters Local No. 579 v. B&M Transit, Inc.*, in which the Seventh Circuit found that sanctions were warranted where the offending party had mischaracterized precedent, made frivolous legal arguments with no grounding in case law, and misstated the factual terms of a contract. 882 F.2d 274,

280–81 (7th Cir. 1989). Tauriac's last case, *Retired Chicago Police Association v. Firemen's Annuity & Benefit Fund of Chicago*, upheld sanctions against a party which adduced no evidence that it conducted *any* factual inquiry before naming Defendant in class litigation. 145 F.3d 929, 934–35 (7th Cir. 1998). Tauriac has not pointed to any conduct on Plaintiff's part that places him on par with the offending parties in these cases.

## Conclusion

For the reasons stated herein, Tauriac's motion for sanctions [102] is denied.

**IT IS SO ORDERED.**          ENTERED  8/31/17

_____
**John Z. Lee**
**United States District Judge**